AO 106 (Rev. 04/10) Application for a Search Warrant

*for AUSA Ahumada 9/20/18*

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED

2018 SEP 20 PM 12: 46



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Doppio Cellular Telephone
Model: F1811
FCC ID: N2GF1811

Case No. '18 MJ 1 0537

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-1
(INCORPORATED HEREIN)

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC §§ 1324 and 1326 | Bringing in and harboring certain aliens and attempted entry after deportation. |

The application is based on these facts:

SEE AFFIDAVIT OF SPECIAL AGENT GUSTAVO CARRILLO

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gustavo Carrillo, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/20/18

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Judge's signature*
*Printed name and title*

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Doppio Cellular Telephone
>Model: F1811
>FCC ID: N2GF1811
>IMEI: 352897081126560
>(**Target Device 1**)

**Target Device 1** is currently in the possession of The Department of Homeland Security, 2051 North Waterman Avenue Suite 100, El Centro, CA 92243, in the Southern District of California.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 7, 2018 to September 14, 2018:

a. tending to indicate efforts to smuggle illegal aliens from Mexico into the United States, or harbor and transport illegal aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 8 U.S.C. §§ 1324 and 1326.**

# AFFIDAVIT

I, Gustavo Carrillo, Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices, as further described in Attachments A-1, A-2, A-3, A-4, and A-5 and seize evidence of crimes, specifically, violations of Title 8, United States Code, Sections 1326 and 1324, as more particularly described in Attachment B:

   a. Doppio Cellular Telephone
      Model: F1811
      FCC ID: N2GF1811
      IMEI: 352897081126560
      (**Target Device 1**) (described further in Attachment A-1)

   b. Maxwest Cellular Telephone
      Model: Uno M2
      FCC ID: 2AEN3UNOM2
      IMEI: 359826078587024
      (**Target Device 2**) (described further in Attachment A-2)

   c. Alcatel Cellular Telephone
      Model: One Touch
      FCC ID: RAD525
      (**Target Device 3**) (described further in Attachment A-3)

   d. Zuum Cellular Telephone
      Model: Brix
      IMEI: 352531090281321
      (**Target Device 4**) (described further in Attachment A-4)

   e. Samsung Cellular Telephone
      Model: SM-G531H
      IMEI: 353554087347265
      (**Target Device 5**) (described further in Attachment A-5)

1

This search supports an investigation and prosecution of Aquilina SARMIENTO-Sanchez (SARMIENTO), Ramiro MAGANA-Gonzalez (MAGANA), Herlindo DURAN-Perez (DURAN), Celestino SILVA-Santiago (SILVA), Isidro GUERRERO (GUERRERO) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. US Border Patrol ("USBP") Agents seized **Target Device 1** from MAGANA, **Target Device 2** from DURAN, **Target Device 3** from SILVA, and **Target Device 4** from GUERRERO, at the time of their arrests for eluding inspection and examination and attempting re-entry after deportation, in violation of Title 8, United States Code, Sections 1325 and 1326, on September 13, 2018. **Target Device** 5 was seized from SARMIENTO after USBP arrested her for eluding examination and inspection when entering the United States and took her to the hospital because she was feeling ill. In addition, the **Target Devices** likely contain evidence of the individuals who assisted SARMIENTO, MAGANA, DURA, SILVA, and GUERRERO with coming into the United States illegally in violation of Title 8, United States Code, Section 1324. The **Target Devices** are currently in the possession of DHS and stored in the seized property vault at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243, in the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

5.      I am a Special Agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since July 2016.  In preparation for my duties as a special agent, I completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program.

6.      I am currently assigned to the Assistant Special Agent in Charge Calexico, California, Border Enforcement Security Task Force (BEST), Human Smuggling/Human Trafficking Group, and have been so for 16 months.  As a Special Agent assigned to the BEST Human Smuggling/Human Trafficking Group, I investigate violations pertaining to the smuggling of aliens across the United States Border, the trafficking of aliens for the purposes of prostitution and indentured servitude, kidnapping, rape, and extortion of aliens, narcotics smuggling, and various other crimes related to United States border violence. During these investigations, I have used, and assisted in the use of, many various kinds of investigative techniques, including the use of cooperating informants, live surveillance, the issuance of grand jury and administrative subpoenas, financial analysis, toll analysis, the search of electronic storage devices and interviews of witnesses, victims and defendants. Prior to becoming a Special Agent, I was employed as a Uniformed Police Officer with the United States Federal Protective Service from August 2008 to June 2016.  In preparation, I completed the Federal Law Enforcement Training Center Uniformed Police Training Program, as well as the Federal Protective Service Field Training Program.  As a Uniformed Police Officer, I conducted probable cause arrests, warrant arrests, and preliminary investigations on various title 18 US Code violations, Federal Code of Regulations violations, and violations of State and Local Statutes.  I additionally served as an instructor for new federal law enforcement officers, as well as federal employees, on various subjects to include: basic law enforcement investigations, basic law enforcement procedures, emergency management, and security related subjects.  During my tenure, I was also tasked as the representative for the Federal Protective Service on several federal security

committees and several local law enforcement committees. In addition, I served in the United States Marine Corps for six years, serving as a Sergeant and Squad Leader as part of an infantry rifle platoon. In 2005 I received a Bachelor's of Arts Degree in Social Behavioral Science with Emphasis in Criminology, from the University of Utah.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Those involved in conspiracies to smuggle and traffic aliens generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling aliens across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them relayed to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

  c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  d. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Alien smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport aliens and/or alien Smuggling proceeds.

  g. The use of cellular telephones by conspirators or alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This

5

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.     tending to indicate efforts to smuggle illegal aliens and proceeds from alien smuggling from Mexico into the United States.

    b.     tending to identify accounts, load houses, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States;

    c.     tending to identify co-conspirators, criminal associates, or others involved in the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States;

    d.     tending to identify travel to or presence at locations involved in the smuggling of illegal aliens from Mexico into the United States, or harboring and transporting of illegal aliens within the United States, such as stash houses, load houses, or delivery points;

    e.     tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

12. On September 13, 2018, at approximately 3:45 p.m., when El Centro Sector ("ELS") Border Patrol Agents apprehended a group of five people observed by US Border Patrol assets in Zone 6 of El Centro USBP Station's area of responsibility. Those five people were later identified as Aquilina SARMIENTO-Sanchez, Ramiro MAGANA-Gonzalez, Celestino SILVA-Santiago, Irma NICOLAS-Chavez, and Herlindo DURAN-Paredes. At the time of their apprehension, the group of suspected aliens informed

1  USBP Agents that they had left behind two aliens from their original group after crossing
2  from Mexico into the United States.

3      13.    USBP Agents on the scene searched for the two individuals and discovered the
4  first individual approximately 0.5 miles South of State Route 98 ("SR-98") and determined
5  the individual needed immediate medical attention. The individual was apparently suffering
6  from heat related illness and requested emergency medical services. At approximately 4:25
7  p.m., Imperial County Fire Department ("ICFD") arrived on scene and provided aid to the
8  subject. At approximately 4:45 p.m., ICFD personnel advised that the subject had passed
9  away. USBP Agents found a second individual later identified as Isidro GUERRERO-Lares
10 approximately one (1) mile south and appeared to be in good health. USBP Agents
11 questioned GUERRERO regarding his citizenship and determined that GUERRERO was a
12 citizen of Mexico.

13     14.    After USBP Agents found a total of seven (7) aliens, including one alien that
14 died, USBP Agents and HSI Special Agents interviewed SILVA and his spouse
15 SARMIENTO. During the interview, SILVA and SARMIENTO admitted to crossing into
16 the United States illegally, and stated that they traveled from Chihuahua, Mexico to
17 Mexicali, Mexico via bus, with the intent to travel to the US to find work. SILVA stated
18 that he made arrangements with a "coyote" (smuggler) named "Juan" and agreed to pay
19 Juan $6,700 USD each, for SILVA and his wife SARMIENTO, to help them get into the
20 United States. SILVA stated he contacted Juan to advise Juan that he had arrived in
21 Mexicali. SILVA stated that Juan arranged for a taxi cab driver to transport SILVA to a
22 house at an unknown location in Mexicali. SILVA stated he spent three days at the
23 unknown house, where a man named "Flaco" served as the caretaker of the occupants inside
24 and would not allow anyone to go outside. SILVA stated that the morning of September
25 13, 2018, he and SARMIENTO were transported away from the stash house and met with
26 the other five individuals of the group. The group was then transported to a location near
27 the border fence. SILVA then stated that the group began to walk. SILVA stated the group
28 began to run out of water and one individual could no longer keep walking. SILVA stated

that members of the group attempted to help the struggling individual get up, but the individual could no longer move. SILVA acknowledged that the struggling individual died during the incident.

15. Border Patrol seized **Target Devices 1, 2, 3,** and **4** from aliens incident to their arrest. Border Patrol seized **Target Device 5** from SARMIENTO's personal effects, which were taken from her while she was at the hospital. These were some of the few personal possessions that the aliens had when they encountered Border Patrol.

16. I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in alien smuggling activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of the aforementioned individuals, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.

17. Based on my training and experience along with other law enforcement officers' training and experience, I know that alien smuggling activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience and in the professional experience of other agents with whom I have spoken, this requires planning and coordination in the weeks and often months prior to the event. For example, Alien Smuggling Organizations (ASOs) recruit, evaluate, and supply load drivers with vehicles and phones. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Therefore, I respectfully request permission to search the **Target**

**Devices** for items listed in Attachment B beginning on September 7, 2018, up to and including September 14, 2018.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Other than as described above, the United States has not attempted to obtain this information by other means.

### CONCLUSION

22. Based on all of the facts and circumstances described above, including the circumstances under which the alien passed away, statements by the aliens when they were apprehended, and the nature of the apprehension, probable cause exists to conclude that the aforementioned individuals used the **Target Devices** to facilitate violations of 8 U.S.C. §§ 1324 and 1326. Because the **Target Devices** were promptly seized during the investigation of the aforementioned individuals smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by the aforementioned individuals continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from September 7, 2018 to September 14, 2018.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Gustavo Carrillo
Special Agent

10

Subscribed and sworn to before me this 20th day of September, 2018.

_____
HONORABLE RUTH BERMUDEZ MONTENEGRO
United States Magistrate Judge

11